UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
DOR YESHURIM, INC. d/b/a DOR YESHORIM,

                             Plaintiff,

           -against-

A TORAH INFERTILITY MEDIUM OF EXCHANGE,

                           Defendant.
----------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
CV 10-2837 (JFB) (WDW)

**WILLIAM D. WALL, United States Magistrate Judge:**

       This matter has been referred to the undersigned by District Judge Bianco for

determination of the appropriate relief, amount of damages and attorneys' fees to be awarded to

the plaintiff upon defendant's default.  For the reasons set forth herein, it is respectfully

recommended that a permanent injunction be entered against the defendant, and that plaintiff be

awarded $19,519.20 in attorneys' fees and $1,683.11 in costs for a total award of **$21,202.31**.  It

is further recommended that no additional monetary damages be awarded.

## DISCUSSION

       According to the complaint, plaintiff Dor Yeshurim, Inc. d/b/a Dor Yeshorim provides

genetic screening services for members of the Orthodox Ashkenazi Jewish community in the

United States and worldwide.  Compl. ¶ 7.  Plaintiff has been using its DOR YESHORIM mark

in conjunction with its services since 1983.  Compl. ¶ 10.  Defendant A Torah Infertility Medium

Of Exchange is a not-for-profit corporation that provides infertility counseling, advocacy and

guidance to the Orthodox Ashkenazi Jewish community.  Compl. ¶ 22.  In 2008, defendant

began using the confusingly similar Hebrew wording רודות ירשים or "DOROS YESHORIM" in

conjunction with its services--services that are not only similar to those offered by plaintiff, but

also aimed at the same community.  Compl. ¶ 16.  The literal translation of plaintiff's DOR

YESHORIM mark is "upright generation," *id.* ¶11, while defendant's DOROS YESHORIM is translated as "upright generations," *id.* ¶18.

On June 21, 2010, plaintiff filed a complaint against defendant alleging that defendant's use of the words DOROS YESHORIM[1] as a part of the its logo, website, advertisements, and in other related marketing materials, constitutes (1) trademark infringement and false designation of origin in violation of the Lanham Act, § 43(a), 15 U.S.C. §1125(a); (2) dilution of trademark and unfair competition in violation of § 360-l of the New York General Business Law; and (3) trademark infringement and unfair competition in violation of state common law. On June 23, 2010, defendant was served with a copy of the complaint, but has failed to answer or otherwise move. On October 13, 2010, plaintiff moved for entry of default judgment, and the clerk noted the default on October 20, 2010.

By Order dated February 18, 2011, Judge Bianco granted the plaintiff's motion for default judgment against the defendant, and referred the matter to the undersigned to report and recommend the amount of damages and other relief sought by plaintiff. *See* DE [14]. That Order specifically advised plaintiff that "to the extent that damages and other relief are sought, plaintiff must submit additional evidence." *Id.* I subsequently issued an order setting deadlines for the submission of additional papers including a memorandum of law and an affidavit from a person with knowledge of the relevant facts. *See* Order of 3/9/11, DE [15]. The Order further gave the parties the option of requesting a hearing.

Plaintiff timely filed a Supplemental Memorandum of Law and an affidavit from

---

[1]Plaintiff's papers consistently refer to defendant's use of the Hebrew wording רודות ירשים and the English transliteration of DOROS YESHORIM. For purposes of this Report, references to defendant's infringing use will be cited as "DOROS YESHORIM" only. Any injunction issued should include both רודות ירשים and DOROS YESHORIM.

plaintiff's counsel, Peter Bernstein.  *See* DE [16].  Defendant has not submitted any papers, despite my order having been served on it.  Neither party requested a hearing on the damages issue.

## I. ESTABLISHED FACTS AND LIABILITY

As a result of defendant's default, the following facts in the complaint are deemed admitted and establish defendant's liability.  Plaintiff uses the wording DOR YESHORIM as its trade name and service mark.  Compl. ¶12.   Plaintiff and its predecessors-in-interest have been providing services under this mark since 1983.  *Id.* ¶10.  As a result of plaintiff's widespread use and display of the DOR YESHORIM mark, that mark has acquired significant distinctiveness associated with plaintiff.  *Id.* ¶15.

Defendant began using the DOROS YESHORIM wording in 2008.  *Id.* ¶16.  This wording is essentially identical to the translation of plaintiff's DOR YESHORIM mark.  *Id.* ¶19.  Defendant is using the DOROS YESHORIM wording on its website, in promotional and advertising materials, *id.* ¶20, and in connection with "the provision of education, advocacy, guidance, research and support for Orthodox Jewish men, women and couples dealing with reproductive health and fertility issues" *id.* ¶21.

Plaintiff has received phone calls and engaged in multiple conversations with the public, inquiring if plaintiff was affiliated or associated with defendant.  *Id.* ¶23.  The questions stemmed from the "very high level of similarity between plaintiff's DOR YESHORIM mark and defendant's confusingly similar wording" DOROS YESHORIM.   *Id.*

Plaintiff took various steps to stop defendant from using the DOROS YESHORIM mark.  It took steps required by Orthodox Jewish laws in 2008, *see id.* ¶24, and it sent defendant a cease and desist letter in June 2009, *id.* ¶25.  Defendant has reneged on promises to cease using

DOROS YESHORIM.  *Id.* ¶26.

Plaintiff states that defendant's use of DOROS YESHORIM is likely to cause confusion, mistake or deception in that relevant users are likely to believe that defendant's services are the same as, authorized by, or connected with plaintiff.  *Id.* ¶31.  Furthermore, plaintiff alleges that defendant's use of the confusingly similar DOROS YESHORIM has diluted and detracted from the distinctiveness of plaintiff's DOR YESHORIM mark.  *Id.* ¶ 39.  Defendant's actions "will continue to cause irreparable harm to Plaintiff and its valuable DOR YESHORIM mark, and the reputation and substantial goodwill represented thereby, and said acts will continue unless restrained by this Court."  *Id.* ¶32.

## II. DAMAGES

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is the acts pleaded in a complaint violated the law upon which a claim is based and caused injuries as alleged."  *Cablevision Sys. New York City Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  To establish damages upon a default, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound,* 193 F.2d at 159.

An evidentiary hearing is not required so long as there is a basis for the damages awarded.  *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted).  Documentary evidence may be submitted to support the amount of damages sought. *See Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991).  Plaintiff

4

relies upon its Memorandum of Law ("Pl Mem.") DE [10], and Second Affidavit of Peter I.

Bernstein ("2d Bernstein Aff.") DE [11], filed in support of the default motion, as well as a

Supplemental Memorandum of Law ("Supp. Mem.") DE [16], and Third Affidavit of Peter I.

Bernstein ("3d Bernstein Aff.") DE [16-1], filed in further support of its claim for damages and

attorneys' fees; defendant failed to submit any papers in opposition. The court will examine the

extent to which plaintiff has provided support for the damages it seeks.

## A. Lanham Act Trademark Infringement and False Designation of Origin

Section 43 of the Lanham Act provides for civil liability for a person who, in commerce,

uses any symbol "or any false designation of origin, false or misleading description of fact, or

false or misleading representation of fact, which -- is likely to cause confusion, or to cause

mistake, or to deceive as to affiliation…or as to the origin, sponsorship, or approval of…goods,

services, or commercial activities by another person." 15 U.S.C. §1125(a)(1)(A). To prevent a

violation of 15 U.S.C. §1125(a), the court is entitled to grant injunctions pursuant to 15 U.S.C.

§1116(a).

Plaintiff claims that the acts of defendant in marketing and promoting its infertility

services with DOROS YESHORIM constitute trademark infringement and false designation of

origin as those acts are likely to cause confusion, mistake or deception as to the affiliation of *A

Torah Infertility Medium Of Exchang* with *Dor Yeshorim Inc*. and its "valuable and well-known"

DOR YESHORIM mark. Compl. ¶¶ 31, 34. As plaintiff's allegations are uncontested, it has

established that defendant's use of DOROS YESHORIM is in violation of the Lanham Act.

Thus, plaintiff's entitlement to the specific forms of relief available must be determined.

### 1. Injunctive Relief

Plaintiff contends that defendant has repeatedly violated Section 43(a) of the Lanham Act

by continuing to use the confusingly similar DOROS YESHORIM subsequent to (1) agreeing to cease use of the wording; (2) the filing of the Complaint; and (3) the Court's granting of a Default Judgment. In the complaint, plaintiff seeks a permanent injunction barring defendant from continuing its use of the Hebrew wording רודות ירשים or the English transliteration DOROS YESHORIM, or any other term or wording likely to cause confusion or dilute the distinctive quality of plaintiff's DOR YESHORIM mark.

An injunction may be issued on a motion for a default judgment "upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction." *Broadcast Music, Inc. v. 120 Bay Street Corp.,* 2010 WL 1329078, at *3 (E.D.N.Y. Apr. 5, 2010) (citation omitted). "To obtain a permanent injunction in a trademark action, a party 'must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Patsy's Italian Rest., Inc. v. Banas,* 575 F. Supp. 2d 427, 464 (E.D.N.Y. 2008) (quoting *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006))(internal quotation omitted).[2] Additionally, the plaintiff "must also show the threat of a continuing violation in order to obtain injunctive relief." *Lyons P'ship, L.P. and Hit Entm't v. D&L Amusement & Entm't, Inc., et al.,* 702 F. Supp. 2d 104, 119 (E.D.N.Y. 2010) (citation omitted). Plaintiff specifically addresses these factors in its papers,

---

[2] There is some split in this district as to the appropriate standard to use when determining whether a permanent injunction should issue in a trademark infringement case. One court has used the standard enunciated by the Supreme Court in a patent case and applied it in a trademark context. *See Microsoft Corp. v. AGA Solutions, Inc.,* 589 F. Supp. 2d 195, 204 (E.D.N.Y. 2008)(citing *eBay v. MercExchange, LLC,* 547 U.S. 388, 391 (2006)). Another court has found that since the Second Circuit has not held that the *eBay* case's "slightly more stringent standard" should be applied in a trademark action, lower courts in this circuit should use the Second Circuit's "most recent articulation of the standard for imposing injunctive relief in trademark cases." *Patsy's Italian Rest.,* 575 F. Supp. 2d at 464, n.25 (citing *L. & J.G. Stickley, Inc. v. Cosser,* 255 F. App'x 541, 543 (2d Cir. 2007)(summary order)(quoting *Roach,* 440 F.2d at 56)). The undersigned has adopted the latter approach, but notes that the result in this case likely would be the same under either standard.

and the facts presented in this default context are sufficient for the court to determine plaintiff's

entitlement to injunctive relief.  Compl. ¶¶ 28, 32.  Accordingly, the court will consider the

factors in turn.

### a.  Success on the Merits

To establish a claim for False Designation of Origin under section 43(a) of the Lanham

Act, plaintiff must prove: "(1) that the mark is distinctive as to the source of the good, and (2)

that there is a likelihood of confusion between its good the defendant's." *Yurman Design, Inc. v.*

*PAJ, Inc.,* 262 F.3d 101, 115 (2d Cir. 2001) (citing *Wal-Mart Stores, Inc. v. Samara Bros. Inc.,*

529 U.S. 205, 210 (2000)).  An unregistered mark is distinctive when the "intrinsic nature" of the

mark serves to identify a particular source, or when the mark has developed secondary meaning

such that in the minds of the public, it identifies the product's source as opposed to the product

itself.  *See Samara Bros.*, 529 U.S. at 210 (citations omitted).

The complaint alleges that plaintiff's DOR YESHORIM mark has acquired significant

distinctiveness as associated with plaintiff; it is "inherently distinctive to the public, and serves

primarily as a designator of origin in conjunction with the offering of genetic screening services,

compatibility checking, and counseling emanating from plaintiff."  Compl. ¶¶ 14,15. As these

allegations are deemed admitted, the first element of false designation of origin is satisfied.

As to the second element of false designation of origin, "marks need not be identical, but

only similar, for there to be a likelihood of confusion."  *New York State Elec. & Gas*

*Corporation v. U.S. Gas & Elec., Inc.,* 697 F. Supp. 2d 415, 432 (W.D.N.Y. 2010) (citing

*Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 538 n.3. (2d. Cir. 2005)).

Plaintiff alleges that it received numerous phone calls, and engaged in multiple conversations

with the public, inquiring if plaintiff was affiliated or associated with defendant.  The questions

stemmed from the "very high level of similarity" between plaintiff's DOR YESHORIM mark

and defendant's confusingly similar DOROS YESHORIM. *See* Compl. ¶ 23. Thus, the

allegations of the complaint establish that the strikingly similar marks are not just *likely* to

confuse the relevant public, but have *actually* confused or deceived the public into believing that

defendant's DOROS YESHORIM is associated, sponsored or affiliated with plaintiff's highly

distinctive DOR YESHORIM mark.

  I find that the complaint adequately alleges that plaintiff has a valid and distinctive mark,

and that there is a likelihood of confusion. Accordingly, plaintiff has demonstrated success on

the merits of its claim under the Lanham Act for purposes of obtaining injunctive relief.

### b. Absence of an adequate Remedy at Law and Irreparable Harm

  It is a "well-established principle that there is a presumption of irreparable harm where

there exists a likelihood of consumer confusion." *Tuccillo v. Geisha NYC, LLC,* 635 F. Supp. 2d

227, 249 (E.D.N.Y. 2009) (citing *Weight Watchers Int'l, Inc. v. Luigino's, Inc.,* 423 F.3d 137,

144 (2d Cir. 2005) ("[a] plaintiff who establishes that infringer's use of its trademark creates a

likelihood of consumer confusion generally is entitled to a presumption of irreparable injury")).

As discussed *supra,* by defendant's default, the admitted allegations establish that not only were

consumers likely to be confused, they were actually confused. Irreparable harm is thus

presumed, and, as defendant has not rebutted that presumption, established.

  In addition, defendant has continued to use the infringing mark on its website as recently

as April 2011. *See* 3d Bernstein Aff. ¶5, Ex. G. Plaintiff has shown that absent injunctive relief,

defendant will likely continue to cause irreparable harm by creating further consumer confusion.

In light of plaintiff's undisputed factual allegations, the Court finds that plaintiff has

demonstrated the continuance of irreparable harm absent an injunction, and recommends that a

permanent injunction be issued against defendant.

### 2. Monetary Damages Under 15 U.S.C. §1117(a)

When a defendant violates section 1125(a), plaintiff may recover (1) defendant's profits; (2) any damages sustained by plaintiff; and (3) the costs of the action.[3] 15 U.S.C. §1117(a). In the complaint, plaintiff seeks an award under all three sections, including reasonable attorneys' fees. "Generally, to receive compensation, a plaintiff must demonstrate with specificity that a specific injury or profitable infringement occurred." *Road Dawgs Motorcycle Club v. Cuse Road Dawgs, Inc.,* 679 F. Supp. 2d 259, 293 (N.D.N.Y. 2009) (citing *Vuitton Et Fils, S.A. v. Crown Handbags,* 492 F. Supp. 1071, 1077 (S.D.N.Y. 1971) (citing *Monsanto Chem. Co. v. Perfect Fit Mfg. Co.,* 349 F.2d 389, 392 (2d Cir.1965))). On the issue of defendant's profits and plaintiff's damages, I find that both the Complaint and plaintiff's papers in support are woefully inadequate to support any monetary relief. For the reasons set forth below, I recommend that neither profits nor damages be awarded.

### a. Defendants' Profits

Under §1117(a) of the Lanham Act, plaintiff is entitled to damages in the amount of any profits that defendants have derived from their offering of services bearing the infringing DOROS YESHORIM mark. The statute specifically provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. §1117(a).

_____

[3]Although the law provides that a plaintiff may elect recovery of statutory damages or actual damages, *see* 15 U.S.C. §1117, statutory damages are only appropriate if the mark infringed upon is registered on the principal register in the United States Patent and Trademark office, or the infringement is in violation of section 1114(1)(a) of Title 15 or section 220506 of Title 36. 15 U.S.C.A. §1117(b); 15 U.S.C.A. §1117(d)(1)(B)(i). Here, plaintiff's DOR YESHORIM mark was not registered with the United States Patent and Trademark Office at the time this action was brought, and defendant's infringing acts did not violate the specified sections of Title 15 or Title 36. Thus, statutory damages are not appropriate.

Acknowledging the difficulties faced by plaintiff in proving actual sales where a defendant has defaulted or is uncooperative, courts have found it appropriate to "resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence." *Chloe v. Zarafshan,* 2009 WL 2956827, at *5 (S.D.N.Y. Sept. 15, 2009) (quoting *Aris Isotoner Inc. v. Dong Jin Trading Co.,* 1989 WL 236526, at *17 (S.D.N.Y. Sept. 14, 1989)). Even in such a situation, however, "some reasonable basis for computation has to be used, even though the calculation may only be approximate." *Chloe,* 2009 WL 2956827, at *5.

First, plaintiff notes that it is aware that defendant "has earned no 'profits' *per se,* as defendant appears to be a not-for-profit organization. Pl Mem. at 8. Plaintiff fails to address whether as a matter of law, a not-for-profit organization can earn "profits" within the meaning of the Lanham Act. Putting that aside, however, plaintiff still has failed to establish in any way whether defendant profited in any way from its infringing use.

Although the Complaint is replete with allegations regarding the confusion between plaintiff's DOR YESHORIM mark and defendant's use of DOROS YESHORIM, there is not a single factual allegation that defendant derived any profit from its use. In the papers submitted in support of this motion, plaintiff states its belief that defendant has "undoubtedly generated revenue and 'customers'" associated with its improper use of DOROS YESHORIM. Pl Mem. at 8. Plaintiff further notes that it is currently "impossible to determine what profits defendant has earned from its offering of services in conjunction with its improper use" of that mark. Supp. Mem. at 10. As such, plaintiff essentially concedes that it has no evidence of defendant's profits.

The only damages evidence of any sort provided by plaintiff is copies of defendant's

Form 990 Tax Returns for the three tax years beginning July 1, 2005 and ending June 30, 2008. Plaintiff's counsel avers that he has "personally attempted to obtain additional information regarding the revenues earned by Defendant . . . and ha[s] been unsuccessful in doing so." 2d Bernstein Aff. at ¶13. Counsel does not, however, detail how those attempts were made. Although imbedded in its papers is plaintiff's "initial request" that the court issue an order to compel the immediate production of all documents establishing the revenue earned by Defendant subsequent to when the infringement of Plaintiff's DOR YESHORIM mark commenced," Supp. Mem. at 13, it does not indicate that it ever served <u>any</u> discovery demands on defendant. Although plaintiff could have served discovery demands without the court's direction, it apparently did not, and thus there is nothing for the court to "compel."

Moreover, in addition to direct discovery from defendant, there were numerous ways in which plaintiff could have supported its claim that defendant profited from the infringement, none of which plaintiff apparently attempted. For example, plaintiff could have subpoenaed defendant's bank records to arrive at an estimate. *See, e.g., Chloe,* 2009 WL 2956827, at *6 (approving use of defaulting defendant's bank records to estimate infringer's profits). It could have attempted to provide testimony from an expert or even from someone at plaintiff's own organization. *See, e.g., U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza & Pasta Inc.,* 2009 WL 4351962, at *4 (S.D.N.Y. Dec. 1, 2009) (affidavit of plaintiff's principal in which she used her personal observations of defendant's business, her years of experience, and her familiarity with the volume of business in the area, sufficient to provide a reasonable estimate of defendant's profits), *adopted by* 2009 WL 5178023 (S.D.N.Y. Dec. 31, 2009). Plaintiff has put forth no evidence upon which to base an award of defendant's profits.

Plaintiff does suggest that an award of $100,000 would be "reasonable" compensation,

Supp. Mem. at 13-14, but has not provided any basis for this number or any evidence to support it. Plaintiff argues that it is "reasonable to presume" that defendant's increase in revenue can be attributed to its infringing use of plaintiff's mark. Mem. at 8. The only evidence of any sort provided by plaintiff does not support its conclusion that defendant's enjoyed increased revenues. Examination of the three years of defendant's tax returns provided by plaintiff shows that defendant's revenue jumped from the low $1 million mark in the two years from July 1, 2005 to June 30, 2007 to over $2.2 million in the year spanning July 1, 2007 to June 30, 2008. Plaintiff then states that upon information and belief, defendant's infringing use commenced "about June 30, 2008." *Id.* at 13; *see also* Compl. ¶16 (alleging that defendant commenced its use of the infringing mark "in 2008"). Putting this information together, it appears that the significant jump in defendant's revenues occurred *before* it began infringing plaintiff's mark, and thus the tax returns do not provide any evidentiary basis for an award of profits.

Although plaintiff is admittedly in a somewhat difficult position because defendant has defaulted, it still has the burden to present some reliable method for calculating the profits. As plaintiff has provided no evidence whatsoever regarding defendant's profits, there is no basis upon which the court may calculate an amount. Accordingly, I recommend no award for defendant's profits.

### b. Plaintiff's damages

Section 1117(a) allows plaintiff to recover its damages attributable to defendant's violations. Plaintiff has not, however, submitted any documents that support a loss in profit, nor has plaintiff suggested an amount in monetary damages. Although plaintiff's complaint mentions loss of reputation and goodwill as a result of defendant's infringing conduct, *see* Compl. ¶32, plaintiff has failed to provide any evidentiary support for damages on this basis.

The only affidavits submitted by plaintiff are those of its attorney.  Unlike its arguments that it was hampered in demonstrating defendant's profits due to defendant's default, plaintiff has not suggested why it is unable to provide any evidence for its own damages.  Plaintiff has control of its own financial records and employees and thus could have easily provided evidence of its own losses, if any.  *See, e.g., Strippit, Inc. v. Coffee,* 2009 WL 3644247, at *2 (W.D.N.Y.  Oct. 27, 2009) (evidence of drop-off in plaintiff's sales during the infringement period was sufficient to establish lost profits of plaintiff as damages); *AW Indus., Inc. v. Sleep Well Mattress, Inc.,* 2009 WL 485186, at *3 (E.D.N.Y. Feb. 26, 2009) (since plaintiff could not establish defaulting defendant's actual sales, court found it could estimate its own damages even though its method was "speculative").

As plaintiff has apparently abandoned its claim for monetary damages, I recommend no award of such damages.  *See, e.g., Pita v. Tulcingo Car Serv., Inc.,* 2011 WL 1790833, at *5 (E.D.N.Y. Apr. 7, 2011) (finding that plaintiff had abandoned his claim by neither requesting monetary damages nor making any effort to prove an amount in his default motion), *adopted by* 2011 WL 1827125 (May 10, 2011); *Maya Swimwear LLC v. Rivera*, 2010 WL 1257436, at *1 (S.D.N.Y. Mar. 26, 2010) (no damages award where plaintiff provided nothing more than "sheer speculation" that it suffered financial loss).

### c.  Treble Damages

Plaintiff further seeks to recover treble damages and profits pursuant to 15 U.S.C. §1117, but does not indicate whether it is seeking this relief pursuant to subsection (a) or (b).   This discussion is rendered academic in light of my determination *supra* that plaintiff has not established entitlement to either its damages or defendant's profits.  Even assuming plaintiff were able to establish some entitlement to defendant's profits, for the reasons set forth below,

treble damages are not appropriate under either subsection.

The statute permits an award of up to three times the plaintiff's *damages*, not defendant's profits. "Because §1117(a) does not explicitly provide for trebling an award of defendant's profits, but only permits trebling of plaintiff's actual damages, courts cannot treble an award of defendant's profits." *U.S.A. Famous Original Ray's Licensing Corp.,* 2009 WL 4351962, at *2 (citing *Nutting v. RAM Sw., Inc.,* 69 F. App'x 454, 458 (Fed. Cir. 2003)). As discussed *supra,* plaintiff has failed to allege, must less establish its entitlement to, any actual monetary damages, and thus cannot benefit from the trebling provision in §1117(a).

Under §1117(b), the court must, absent extenuating circumstances, treble the greater of the plaintiff's damages or defendant's profits. This provision is only applicable when the mark infringed upon is registered on the principal register in the United States Patent and Trademark office, or the infringement is in violation of section 1114(1)(a) of Title 15 or section 220506 of Title 36. 15 U.S.C.A. §1117(b); 15 U.S.C.A. §1117(d)(1)(B)(i). Here, plaintiff's DOR YESHORIM mark was not registered with the United States Patent and Trademark Office at the time this action was brought. As defendant's infringing acts do not constitute counterfeit, and have not violated section 1114(1)(a) of Title 15 or section 220506 of Title 36, plaintiff is not entitled to treble damages or profits under §1117(b).

### d. Costs

Plaintiff is entitled to recover its costs pursuant to §1117(a). Plaintiff has submitted invoices supporting the following disbursements: (1) $350.00 filing fee for this complaint; (2) process server fees totaling $466.05; and (3) Pacer and electronic research costs totaling $867.06. 2d Bernstein Aff., Ex. B; 3d Bernstein Aff., Ex. G. Accordingly, the undersigned recommends an award of costs in the amount of $1,683.11.

14

### e. Attorneys' Fees

The Lanham Act provides that the court may award reasonable attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. §1117(a). "A finding of willful infringement is sufficient for a court to find the case exceptional for the award of attorneys' fees." *Lyons,* 702 F. Supp.2d at 119 (citing *Bambu Sales v. Ozak Trading,* 58 F.3d 849, 854 (2d Cir. 1995); *Golight, Inc., v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1339-40 (Fed. Cir. 2004)). "When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." *Lyons,* 702 F. Supp. 2d at 119 (quoting *Gucci Am., Inc. v. MyReplicaHandbag.com,* 2008 WL 512789, at *3 (S.D.N.Y. Feb. 26, 2008) (citation omitted)). By reason of its default, defendant is a willful infringer and the case is "exceptional" for the purpose of determining plaintiff's entitlement to attorneys' fees. In addition, further evidence of defendant's willfulness is found in plaintiff's allegations that defendant initially changed its marketing materials and website, only to eventually revert to its original improper use of DOROS YESHORIM. Compl. ¶ 27. Thus, I recommend that plaintiff be awarded reasonable attorneys' fees.

The party seeking reimbursement of attorneys' fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983). In making the fee determination, "district courts have broad discretion, using 'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and the rates charged in a given case.'" *AW Indus., Inc.,* 2009 WL 485186, at *5 (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992)).

In the Second Circuit, the standard for establishing the amount of reasonable attorneys' fees is the "presumptively reasonable fee." *Arbor Hill Concerned Citizens v. County of Albany,*

522 F.3d 182, 183-84 (2d Cir. 2008). In calculating the presumptively reasonable fee, the court

should look to what a "reasonable, paying client, who wishes to pay the least amount necessary

to litigate the case effectively" would be willing to pay. *Id.* at 190. The presumptively

reasonable fee is the "reasonable hourly rate multiplied by a reasonable number of expended

hours." *Finkel v. Omega Comm. Servs., Inc.,* 543 F. Supp. 2d 156, 164 (E.D.N.Y.2008); *see also*

*Arbor Hill,* 522 F.3d at 188-90. In determining a presumptively reasonable fee, the court may

look at a number of factors, including but not limited to those listed in *Johnson v. Georgia*

*Highway Express, Inc.*, 488, F.2d 714 (5th Cir. 1974).[4]

A reasonable hourly rate must be considered within the context of the relevant legal

"community;" specifically, "the district where the district court sits." *Arbor Hill*, 522 F.3d at

190. To forgo implementing the relevant legal community standards of determining hourly

rates, a party must "persuasively establish that a reasonable client would have selected out-of-

district counsel because doing so would likely (not just probably) produce a substantially better

net result." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009). As this

case arises in the Eastern District of New York and plaintiff has not provided any evidence that

selection of out-of-district counsel would have likely yielded a better net result, the court will

employ prevailing market rates of the Eastern District.

The plaintiff seeks to recover fees for three legal professionals. Peter Bernstein, a partner

---

[4]The Johnson factors, as articulated by the court in *Arbor Hill*, include the following: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill,* 522 F.3d at 186, n.3 (citing *Johnson*, 488 F.2d at 717-19).

with 16 years of intellectual property experience, billed at a rate of $335 per hour. His senior associate, Keith Weltsch, billed at $285 per hour. Norbert Sygdziak, a paralegal, billed at a rate of $100 per hour. Fee awards in the Eastern District of New York have recently been approved for partner hourly rates of $200 to $400, and associate hourly rates of $100 to $295. *See Pita,* 2011 WL 1790833, at *9 (citing *Luca v. County of Nassau,* 698 F. Supp. 2d 296, 303–06 (E.D.N.Y. 2010); *Lochren v. County of Suffolk,* 2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010); *Gutman v. Klein,* 2009 WL 3296072, at *3 (E.D.N.Y. Oct.13, 2009); *Melnick v. Press,* 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (reviewing cases); *Coated Fabrics v. Mirle Corp.,* 2008 WL 163598, at *7-8 (E.D.N.Y. Jan 16, 2008) (collecting cases); *Ueno v. Napolitano,* 2007 WL 1395517, at *9 (E.D.N.Y. May 11, 2007); *Cho v. Koam Med. Servs. P.C.,* 524 F. Supp. 2d 202, 207 & n. 4 (E.D.N.Y.2007) (collecting cases)). At least one court has found that the current rate for paralegals is $100 per hour. *See Artemide Inc. v. Spero Elec. Corp.,* 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010), *adopted by* 2010 WL 5452077 (E.D.N.Y. Dec. 28, 2010); *but see Amerisource Corp. v. Rx USA Int'l, Inc.,* 2010 WL 2160017, at *10 (E.D.N.Y. May 26, 2010) (stating that prevailing paralegal rate in Eastern District to range from $75 to $90). The hourly rates charged by plaintiff's counsel fall within the range of approved rates in this district. Accordingly, I find them to be reasonable and turn to an examination of the hours expended.

A fee application must be supported by contemporaneous time records that describe with specificity, by attorney, the nature of the work done, the hours expended, and the dates on which the work was performed. *Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160-1161 (2d Cir. 1994). Plaintiff has provided contemporaneous billing records, but has failed to provide any summary providing the total numbers expended on this case. By the court's reckoning, plaintiff

has expended 19.0 hours by partner Bernstein, 62.4 hours for associate Weltsch, and 2.5 hours for paralegal Sygdziak for a total of 83.9 hours. *See* 3d Bernstein Aff., Ex. F.; 2d Bernstein Aff., Ex. B. I have reviewed the billing records and find that the level of detail is sufficient to meet the requisite standard.

In determining whether a reasonable number of attorney hours were expended, the court should "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case" and "[i]f the court determines that certain claimed hours are 'excessive, redundant, or otherwise unnecessary,' the court should exclude those hours in its calculation." *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir. 1998) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). Here, plaintiff seeks to recover attorneys' fees totaling $26,649.00 for 83.9 hours' work.

Upon examination of all relevant factors, I find the hours spent in litigating this matter to be excessive. It has been noted that "[t]he time and labor required for seeking a judgment by default, pursuant to Fed.R.Civ.P. 55 and based on the defendant's failure to plead or otherwise defend, as well as the level of skill required to perform the legal tasks in connection with it, are . . . *de minimis." Days Inn Worldwide, Inc. v. Amar Hotels, Inc.,* 2008 WL 2485407, at *9 (S.D.N.Y. June 18, 2008). In the *Days Inn* case, the court concluded that that "[n]o reasonable paying client" would be willing to pay $20,057.54 in attorneys' fees in a Lanham Act case where the defendant had defaulted, and reduced the fees sought by 75%. *Id.*; *see also AW Indus.,* 2009 WL 485186, at *6 (finding it "incredible" that over 100 hours were expended in straightforward Lanham Act case in which defendant defaulted and reducing hours by one-third); *Artemide Inc.,* 2010 WL 5452075, at *4 (approving 44.1 hours in Lanham Act case).

In addition, the bulk of the work was performed by a senior associate with a high billing

rate.  Given the straightforward nature of this case, it seems that a more junior associate or a paralegal could have performed some of this work.  *See, e.g., Microsoft Corp. v. Computer Care Ctr., Inc.,* 2008 WL 4179653, at *15-16 (E.D.N.Y. Sept. 10, 2008) (significant reduction warranted due to, in part, to use of senior staff to perform work that could have been done by lower billers).

As discussed in detail *supra,* the legal work performed was largely unsuccessful in that the complete failure to provide evidence, particularly of plaintiff's damages, foreclosed recovery of an award of damages.  In addition, defendant defaulted, the default motion and damages proceedings were unopposed, and no novel issues of law were presented.  Based on an examination of all the factors, it is respectfully recommended that the fee award be reduced by 20% and that plaintiff be awarded $19,519.20 in attorneys' fees.  *See generally LaBarbera v. J.E.T. Res., Inc.,* 396 F. Supp. 2d 346, 352 (E.D.N.Y. 2005) (noting that upon a finding that hours are excessive, "it is within the discretion of the district court to make an across the board percentage reduction").

## B.  State Law Claims

In addition to the Lanham Act claim, plaintiff asserts claims of dilution of trademark and unfair competition under §360-l of the New York General Business Law and state common law. Plaintiff does not seek any additional relief as a result of its claims made pursuant to state statute.   Accordingly, the court need not address those claims.

The only additional relief sought by plaintiff under the common law unfair competition claim is punitive damages in the amount of $300,000.   The complaint does not, however, specify plaintiff's intent to seek such damages.  Rule 54 provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ.

P. 54(c).  The theory behind this provision is that the defendant "should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2663 (3d ed. 1998).  Allowing a court to give a different type of relief or a larger damages award than that stated in the complaint "would be fundamentally unfair."  *Id.*  "'Notice that comes at the inquest stage' is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to 'permit a plaintiff in a default action to recover for damages not claimed in the complaint.'" *Braccia v. D'Blass Corp.,* 2011 WL 2848146, at *4 (S.D.N.Y. June 13, 2011) (quoting *Silge v. Merz,* 510 F.3d 157, 161 (2d Cir. 2007)), adopted by 2011 WL 2848202 (S.D.N.Y. Jul. 18, 2011).  As the complaint did not put defendant on notice that it was potentially subject to  punitive damages, they may not be assessed as part of the default judgment.

## CONCLUSION

The undersigned recommends that an order issue permanently enjoining defendant, its officer, directors, agents, servants, employees, and all other persons in active concert or participation with it, from any use of the Hebrew wording רודות ירשים or the English transliteration DOROS YESHORIM.  It is further recommended that plaintiff be awarded $19,519.20 in attorneys' fees and $1,683.11 in costs for a total award of **$21,202.31**.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for the plaintiff by electronic filing on the date below.  Plaintiff shall serve a copy upon defendant.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file

objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 19996).


Dated: Central Islip, New York
        August 10, 2011                           /s/ William D. Wall
                                                  WILLIAM D. WALL
                                                  United States Magistrate Judge